IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ALLSERVE SYSTEMS CORP., | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | Civil Action No. 06-483-GMS |
| | ) | |
| ALLSERVE SYSTEMS PLC and | ) | |
| ALLSERVE SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AEGIS COMMUNICATIONS GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION
FOR ABSTENTION OR, IN THE ALTERNATIVE, REMAND**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
R. Judson Scaggs, Jr. (#2676)
Kevin M. Coen (#4775)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
 Attorneys for Defendant

September 1, 2006

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS ........................................................................ ii

INTRODUCTION ................................................................................ 1

NATURE AND STAGE OF PROCEEDINGS ......................................... 2

STATEMENT OF FACTS ...................................................................... 2

    A.    The Parties ........................................................................ 2

    B.    The Proposed Merger ......................................................... 3

    C.    Litigation in the Delaware Court of Chancery ...................... 5

    D.    Plaintiffs' Bankruptcy and Notice of Removal ...................... 6

ARGUMENT ....................................................................................... 7

I.    THIS CASE SHOULD BE REMANDED TO THE DELAWARE
COURT OF CHANCERY .............................................................. 7

    A.    This Case Should Be Remanded To The Delaware Court
Of Chancery Under the Doctrines Of Mandatory
Abstention Or Discretionary Abstention ............................... 7

        1.    Mandatory Abstention Is Appropriate Here ................. 8

        2.    In The Alternative, Discretionary Abstention Is
Appropriate Here ..................................................... 11

    B.    Equitable Remand ............................................................ 16

CONCLUSION .................................................................................... 19

ii.

## TABLE OF CITATIONS

Page(s)

Cases

*9281 Shore Road Owners Group v. Seminole Realty Co. (In re
    9281 Shore Road Owners Corp.)*,
    214 B.R. 676 (Bankr. E.D.N.Y 1997)                14

*Asousa Partnership v. Pinnacle Foods, Inc. (In re Asousa
    Partnership)*,
    264 B.R. 376 (Bankr. E.D. Pa. 2001)           8, 9, 12, 13

*Balcor/Morristown L.P. v. Vector Whippany Assocs.*,
    181 B.R. 781 (D.N.J. 1995)                    16

*Boyer v. Snapp-On Tools Corp.*,
    913 F.2d 108 (3rd Cir. 1990)                  17

*Cambridge Co. v. Cotton (In re Trafficwatch)*,
    138 B.R. 841 (Bankr. E.D. Tex. 1992)           9

*Campbell Bohn & Leffert LLC v. Gold Messenger, Inc. (In re Gold
    Messenger)*,
    221 B.R. 259 (D. Colo. 1998)                   9

*Christo v. Padgett*,
    223 F.3d 1324 (11th Cir. 2000)                 8

*Computerwear, Inc. v. Micro Design, Inc. (In re Micro Design,
    Inc.)*,
    120 B.R. 363 (E.D. Pa. 1990)                  17

*Continental Airlines, Inc. v. Allen (In re Continental Airlines, Inc.)*,
    156 B.R. 441(Bankr. D. Del. 1993)             13

*Federal Nat'l Mortgage Ass'n v. Rockafellow (In re Taylor)*,
    115 B.R. 498 (E.D. Pa. 1990)                   9

*Gorse v. Longneck, Ltd.*,
    107 B.R. 479 (D. Del. 1989)                   17

*In re Best Reception Sys., Inc.*,
    220 B.R. 932 (Bankr. E.D. Tenn. 1998)          8

*In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*,
    6 F.3d 1184 (7th Cir. 1993)                   13

*In re Combustion Eng'g, Inc.,*
     391 F.3d 190 (3d Cir. 2005)                                          10

*KSJ Development v. Lambert*
     223 B.R. 677 (E.D. La. 1988)                                          18

*Lone Star Indus., Inc. v. Liberty Mut. Ins. Co.,*
     1313 B.R. 269 (D. Del. 1991)                                       17, 18

*Richardson v. Phillip Morris Inc.,*
     950 F. Supp. 700 (D. Md. 1997)                                       17

*Stoe v. Flaherty*
     436 F.3d 209 (3d Cir. 2006)                                     8, 10, 11

*Sun Healthcare Group, Inc. v. Levin (In re Sun Healthcare Group,*
     *Inc.),*
     267 B.R. 673 (Bankr. D. Del. 2000)                                  9, 13

*Torkelson v. Maggio (In re Guild & Gallery Plus, Inc.),*
     72 F.3d 1171 (3d Cir. 1996)                                          11

*Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines,*
     *Inc.),*
     278 B.R. 42 (Bankr. D. Del. 2002)                                   9, 13

*TTS, Inc. v. Stackfleth (In re Total Technical Svcs., Inc.),*
     142 B.R. 96 (Bankr. D. Del. 1992)                                    13

Statutes

28 U.S.C. § 1332                                                       11, 14

28 U.S.C. § 1334                                                       passim

28 U.S.C. § 1447                                                            9

28 U.S.C. § 1452                                                       passim

28 U.S.C. 157                                                       7, 10, 15

Other Authorities

Bankruptcy Rule 9027                                                        7

INTRODUCTION

Defendant Aegis Communications Group, Inc. ("Aegis") respectfully submits this brief in support of its motion for order to abstain, or in the alternative, remand this case to the Court of the Chancery of the State of Delaware. This case focuses on a merger agreement entered into by the parties and eventually terminated by the defendant. Plaintiffs, AllServe Systems PLC ("AllServe PLC") and AllServe Systems, Inc. ("AllServe," collectively, "Plaintiffs" or "AllServe") initially, and correctly, recognized that the Delaware Court of Chancery was the proper Court for this case and filed a Verified Complaint, Motion to Expedite Proceedings and a Motion for a Preliminary Injunction in that Court. After the Court of Chancery denied both motions, the plaintiffs allowed this case to go dormant. Indeed, prior to plaintiffs' August 4, 2006, Notice of Removal (the "Notice of Removal") it had been more than two full years since the plaintiffs took any substantive action in this case.

Now that AllServe has filed a petition for bankruptcy in the United States Bankruptcy Court for the District of New Jersey, the plaintiffs seek to ultimately have their claims heard in that Court, apparently believing it will look more favorably upon their claims than did the Court of Chancery. This case, however, is only related to AllServe's bankruptcy by the fact that any recovery will go to the bankruptcy estate. Thus, this Court must abstain pursuant to 28 U.S.C. § 1334(c)(2), or in the alternative, it should exercise its discretion to abstain pursuant to 28 U.S.C. § 1334(c)(1) or to remand pursuant to 28 U.S.C. § 1452.

NATURE AND STAGE OF PROCEEDINGS

Plaintiffs filed this action on November 12, 2003 against Aegis in the Court of Chancery of the State of Delaware, seeking a preliminary and permanent injunction, specific performance and a declaratory judgment to enforce the terms of a merger agreement entered into by the parties (the "Merger Agreement," attached as Exhibit A to the Verified Complaint). The plaintiffs also filed a Motion to Expedite Proceedings and a Motion for a Preliminary Injunction. Both motions were denied.

On December 12, 2003, the defendant filed its Answer to the Verified Complaint and Counterclaims seeking to recover the expenses it incurred in connection with the Merger Agreement.

On August 3, 2006, the plaintiffs removed this case to the United States District Court for the District of Delaware, and stated their intention to move to transfer the case to the United States District Court for the District of New Jersey so that the matter could be referred to the United States Bankruptcy Court for the District of New Jersey.

On September 1, 2006, the defendant moved to abstain or, in the alternative, remand this action to the Court of Chancery pursuant to 28 U.S.C. § 1334(c)(2), 1334(c)(1) and 1452.

STATEMENT OF FACTS

A.    The Parties

Plaintiff, AllServe Systems PLC is a United Kingdom corporation with its principal place of business in Ascot, United Kingdom. AllServe PLC is a privately held IT-enabled services company.

Plaintiff, AllServe Systems, Inc. is a Delaware corporation with its principal place of business in North Brunswick, New Jersey. AllServe is a wholly owned subsidiary of AllServe PLC. AllServe was created to be merged into Aegis.

Defendant, Aegis, is a Delaware corporation with its principal place of business in Irving, Texas. Aegis is a telecommunications-based marketing, customer service and call center management company.

B.     The Proposed Merger

After an intense search process by Aegis' financial advisor, AllServe emerged as the only interested party. After extensive negotiations between AllServe PLC and Aegis, the parties entered into the Merger Agreement on or about July 11, 2003. At the time Aegis entered into the Merger Agreement, its rapidly deteriorating financing situation necessitated some form of strategic financial transaction.

The Merger Agreement provided that Aegis and AllServe would merge, with Aegis becoming a wholly-owned subsidiary of AllServe PLC. Under the Merger Agreement, AllServe was required to pay $22,750,000. With the exception of less than $300,000 to be paid to the Series B Preferred Stockholders, the cash involved in the transaction would be used to pay Aegis' pre-merger debt obligations (including its senior bank debt and a portion of its subordinate notes, which would be fully discharged even though only partially paid) and other expenses. Aside from the $300,000 going to the Series B Preferred Stockholders, the other holders of all Aegis equity (including preferred and common stock) were to receive nothing in the transaction in exchange for their equity.

Aegis' board recommended the Merger to its shareholders and the shareholders approved the Merger Agreement in September of 2003. The parties expected the Merger to close no later than the end of September 2003. On October 3, 2003, Aegis notified AllServe that it had received a bona fide written acquisition proposal which, in light of its fiduciary duties, required the Board to enter into negotiations. Despite the potential that AllServe would be outbid, it continued to drag its feet as closing approached. AllServe failed to even provide the documentation required to close the transaction under the Merger Agreement. Indeed, it was not until October 21, 2003 that Plaintiffs declared that all conditions to the closing had been met or waived, although even when Aegis' counsel traveled to New Jersey on October 31, 2003 to close the transaction, certain prerequisites remained unfilled by AllServe.

In part as a result of AllServe's repeated failures to close the Merger, in early November 2003, Aegis entered into a financing arrangement with Deutsche Bank and the Essar Group ("Essar"). Under this agreement, Deutsche Bank and Essar would provide approximately $28.2 million in investment in Aegis in return for two promissory notes and warrants for common stock in the Company. Approximately 12.3 million of the $28.2 million would come due 90 days after the closing of the transaction. The remaining debt could be offset by the conversion of the warrants issued to Deutsche Bank and Essar. If all of the warrants were exercised, Deutsche Bank and Essar would hold approximately 80% of the Company. As contrasted with the AllServe Merger which would have left nothing for Aegis' equity holders, this new transaction would leave a minimum of 20% of the Company in the hands of the current equity holders. Recognizing that the Deutsche Bank/Essar transaction would provide a substantially

superior benefit to the stockholders to whom it owed fiduciary duties, while not unreasonably jeopardizing the benefits to creditors, the Aegis Board decided to terminate the Merger Agreement and then execute and close the transaction with Deutsche Bank and Essar. Deutsche Bank and Essar transmitted the $28.2 million to Aegis on November 5, 2003, and these funds were immediately dispersed to Aegis creditors.

C.     Litigation in the Delaware Court of Chancery

On November 12, 2003, the plaintiffs filed a Verified Complaint in the Court of Chancery of the State of Delaware seeking a preliminary and permanent injunction restraining Aegis from consummating the transaction with Deutsche Bank and Essar. The plaintiffs also sought a determination that Aegis breached the Merger Agreement and, therefore, plaintiffs were entitled to specific performance of the Merger Agreement. In the alternative, plaintiffs sought damages arising from the termination of the Merger Agreement, including a break-up fee of $1,137,500.

With their Verified Complaint, plaintiffs filed a Motion to Expedite Proceedings and Motion for a Preliminary Injunction. The Court denied both motions, in large part because the relief Plaintiffs ultimately sought -- specific performance, and a preliminary injunction to preserve AllServe's ability to pursue specific performance -- was unavailable because the transaction with Deutsche Bank and Essar closed on November 5, 2003, nearly a week before Plaintiffs filed their complaint.

On December 12, 2003, the defendant filed its Answer and Counterclaims. The Counterclaims seek to recover (i) certain travel expenses of AllServe representatives advanced by Aegis, on behalf of AllServe, in connection with the Merger under the terms of the Merger Agreement; (ii) the value of services provided by Aegis to AllServe's

clients; (iii) certain accounting expenses associated with preparation for closing the Merger; (iv) expenses associated with preparation to move certain Aegis employees and operations to India and the value of training and expertise provided to AllServe in connection with that move; and (v) past due rental payments and recourse damages for breaching a lease agreement between Aegis and AllServe for an automated dialer.

After the defendant's Answer and Counterclaims, the parties served some initial discovery but then AllServe allowed the case to go dormant. Indeed, nothing substantive has been happened in this case since January of 2004.

D.    Plaintiffs' Bankruptcy and Notice of Removal

According to the Notice of Removal filed with this Court on August 4, 2006, AllServe Systems PLC was placed in administration in the United Kingdom on November 16, 2005 and on November 18, 2005 AllServe Systems, Inc. filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. Notice of Removal, ¶¶ 1, 2 & 5. The AllServe case was converted from Chapter 11 to Chapter 7 on January 18, 2006. Notice of Removal, ¶ 3. On June 6, 2006, the United States Bankruptcy Court for the District of New Jersey entered an Order extending the time within which AllServe's Chapter 7 Trustee may file Notices of Removal under Bankruptcy Rules 9027 and 9006 for a period of sixty (60) days. Notice of Removal, ¶ 5.

Plaintiffs purported to remove this case pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027. Notice of Removal, ¶ 7. The Plaintiffs also indicated that upon removal to the United States District Court for the District of Delaware, they intend to move to transfer this action to the United States District Court for the District of New

Jersey in order that the case can be referred to the United States Bankrupcty Court for the District of New Jersey. *Id.* As grounds for removal, Plaintiffs state that their claims effect the administration of AllServe's estate and thereby qualify as a "core" proceeding pursuant to 28 U.S.C. 157(b)(2)(A), (B) and (O), or otherwise involve the substantive rights of AllServe under the Bankruptcy Code.

## ARGUMENT

I.    THIS CASE SHOULD BE REMANDED TO THE DELAWARE COURT OF CHANCERY

Plaintiffs' conclusory assertion that removal is proper under 28 U.S.C. § 1452 and Bankruptcy Rule 9027 fails to apply the relevant law. Notice of Removal, ¶ 7. Where, as here, the claims at issue are state law claims that can be addressed by a state court of competent jurisdiction, and the only basis for invoking the Court's jurisdiction is that those state law claims are, at best, "related to" a bankruptcy proceeding under 28 U.S.C. § 1334,[1] the Court should abstain and remand the dispute to state court.

A.    This Case Should Be Remanded To The Delaware Court Of Chancery Under The Doctrines Of Mandatory Abstention Or Discretionary Abstention

This case should be remanded to the Court of Chancery pursuant to 28 U.S.C. § 1452, which provides, in pertinent part, that "[t]he court to which a claim or cause of action has been removed 'may remand such claim or cause of action on any

---

[1]    Plaintiffs' Notice of Removal refers only to 28 U.S.C § 1452, however, § 1452 only provides a basis for removal if the District Court has jurisdiction under 28 U.S.C. § 1334. Therefore, Plaintiffs presumably intend to rely on § 1334 and § 1452.

equitable ground.'" *See Asousa Partnership v. Pinnacle Foods, Inc. (In re Asousa Partnership)*, 264 B.R. 376, 381 n.5 (Bankr. E.D. Pa. 2001) ("*Asousa Partnership I*"). "Once a District Court determines that it either must abstain from hearing a removed case pursuant to 1334(c)(2) or should abstain pursuant to 1334(c)(1)'s permissive abstention provisions, it can consider whether there is reason for the suit to proceed in state court. If so, there will be an 'equitable ground' under § 1452(b)." *Stoe v. Flaherty*, 436 F.3d 209, 215 (3d Cir. 2006); *See also In re Best Reception Sys., Inc.*, 220 B.R. 932, 958 (Bankr. E.D. Tenn. 1998). Grounds for both mandatory and discretionary abstention are present here.

1.    <u>Mandatory Abstention Is Appropriate Here</u>

The Court should abstain from hearing this case under the mandatory abstention doctrine of 28 U.S.C. § 1334(c)(2), which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can timely be adjudicated in a State forum of appropriate jurisdiction.

*See Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir. 2000) ("§ 1334(c)(2) applies to state law claims that have been removed to federal court . . ."). Courts have interpreted § 1334(c)(2) to mean that mandatory abstention is appropriate when the following six elements are present:

(1)    a timely motion is made;

(2)    the proceeding is based upon a state law claim or state law cause of action;

(3)    the proceeding is related to a case under Title 11;

(4)    the proceeding does not arise under Title 11;

(5)    the action could not have been commenced in federal court absent jurisdiction under 28 U.S.C. § 1334; and

(6)    an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

*Asousa Partnership I*, 264 B.R. at 382 (*quoting Federal Nat'l Mortgage Ass'n v. Rockafellow (In re Taylor)*, 115 B.R. 498, 500 (E.D. Pa. 1990).[2] All six elements are present here.

First, this motion was timely filed. 28 U.S.C. § 1447(c) requires that a motion to remand on any basis other than lack of subject matter jurisdiction must be brought within 30 days of the date of removal. *See Campbell Bohn & Leffert LLC v. Gold Messenger, Inc. (In re Gold Messenger)*, 221 B.R. 259, 261-62 (D. Colo. 1998) (applying 30-day time limit of § 1447(c) to bankruptcy removal); *Cambridge Co. v. Cotton (In re Trafficwatch)*, 138 B.R. 841, 844 (Bankr. E.D. Tex. 1992) (same). Plaintiffs filed their Notice of Removal on August 4, 2006 and Aegis filed this motion less than 30 days later on September 1, 2006.

---

[2]    In *Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.)*, 278 B.R. 42, 50 (Bankr. D. Del. 2002) and *Sun Healthcare Group, Inc. v. Levin (In re Sun Healthcare Group, Inc.)*, 267 B.R. 673, 676 (Bankr. D. Del. 2000), the courts rearranged the six mandatory elements, removing the third element and splitting the sixth element into one which requires a state proceeding to already have been commenced and another which requires that the proceeding may be timely adjudicated. The rearranged elements do not affect the § 1334 analysis and are addressed in this section.

Second, this case is clearly based on equitable state law claims and causes of action. Even though Plaintiffs' claim for specific performance under the Merger Agreement is essentially meaningless as a result of the Court of Chancery's ruling on Plaintiffs' Motion to Expedite Proceedings, the remaining claims and Defendant's counterclaims still relate to the Merger Agreement, which expressly provides that it will "be governed by, and construed in accordance with, the laws of the State of Delaware . . . ." Ex. A to Verified Complaint, § 10.11.

Third, this proceeding is "related to" the bankruptcy only because the outcome could conceivably have an effect on the estate being administered in bankruptcy. *See Stoe*, 436 F.3d at 216 (*quoting In re Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1999). This question is the equivalent of whether the plaintiffs' claim is a "core" proceeding or a "non-core" proceeding under 28 U.S.C. § 157. *Id.* at 217. Indeed, "[c]ases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings." *In re Combustion Eng'g, Inc.* 391 F.3d 190, 225 (3d Cir. 2005). Here, Plaintiffs' claims are based solely upon Aegis' termination of the Merger Agreement and, thus, the Bankruptcy Code did not create Plaintiffs' cause of action and it is, therefore, a "non-core" proceeding. *Stoe*, 436 F.3d at 217.

Fourth, as explained above, this proceeding does not "arise under" title 11 because the claims were not created by the Bankruptcy Code and are, therefore, "non-core" proceedings under 28 U.S.C. 157. *Id.* A matter arises under Title 11 only if it invokes a substantive right under Title 11. *See Torkelson v. Maggio (In re Guild &*

*Gallery Plus, Inc.*), 72 F.3d 1171, 1178 (3d Cir. 1996). This case is based solely on a failed Merger Agreement with a Delaware choice of law provision.

Fifth, under no circumstances could this case have been brought in the District Court of the District of Delaware absent jurisdiction under 28 U.S.C. § 1334, which confers jurisdiction over actions "related to" bankruptcy. Clearly this case could not have been brought in the District Court of the District of Delaware under Federal subject matter jurisdiction because it focuses entirely on the Merger Agreement. There is also no complete diversity of citizenship because Aegis and AllServe System, Inc. are both Delaware Corporations. Thus, there is no jurisdiction pursuant to 28 U.S.C. § 1332 and this case could not have been filed in Federal Court absent AllServe's bankruptcy.

Sixth, this case was commenced and may be timely adjudicated in the Court of Chancery, which is a state forum of appropriate jurisdiction. In this context, timeliness is determined with respect to the needs of the Title 11 case. *Stoe*, 436 F.3d at 219. Here, plaintiffs' are in a Chapter 7 liquidation and, therefore, need this claim and all other claims resolved promptly. The Court of Chancery is well known for its ability to adjudicate issues of Delaware law, such as this one, efficiently and promptly and, therefore, this case can be timely adjudicated in the Court of Chancery.

Under the mandatory abstention doctrine, this Court should abstain from hearing this case, and remand to the Delaware Court of Chancery.

2.    In The Alternative, Discretionary Abstention
      Is Appropriate Here

Alternatively, this Court should abstain from hearing this case under the doctrine of discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1). Where most, but

not all, of the requirements for mandatory abstention are met, "careful consideration should be given to whether it would be appropriate to exercise discretionary abstention under § 1334(c)(1)." *Asousa Partnership I*, 264 B.R. at 390.

28 U.S.C. § 1334(c)(1) provides, in pertinent part:

Nothing in this Section prevents a district court in the interests of justice, or in the interest of comity with the State courts or respect for State law, from abstaining from hearing a particular proceeding arising under Title 11 or arising in or related to a case under Title 11.

In exercising its discretion, the Court may consider the following factors:

(1)   the effect or lack thereof on the efficient administration of the estate;

(2)   the extent to which state law issues predominate over bankruptcy issues;

(3)   the difficulty or unsettled nature of the applicable law;

(4)   the presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5)   the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6)   the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)   the substance rather than the form of an asserted "core" proceeding;

(8)   the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)   the burden of the court's docket;

(10)  the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11)    the existence of a right to a jury trial; and

(12)    the presence in the proceeding of non debtor parties.

*In re Sun Healthcare Group, Inc.*, 267 B.R. at 678-79 (*citing Continental Airlines, Inc. v. Allen (In re Continental Airlines, Inc.)*, 156 B.R. 441, 443 (Bankr. D. Del. 1993); *TTS, Inc. v. Stackfleth* (*In re Total Technical Svcs., Inc.*), 142 B.R. 96, 100-01 (Bankr. D. Del. 1992); *In re Trans World Airlines, Inc.*, 278 B.R. at 52. The Court should apply these factors "'flexibly' because 'their relevance and importance' varies with 'the particular circumstances of each case, and no one factor is necessarily determinative.'" *Asousa Partnership v. Pinnacle Foods, Inc.* (*In re Asousa Partnership*), 276 B.R. 55, 75 (Bankr. E.D. Pa. 2002 ("*Asousa Partnership II*") (*quoting In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993). Application of these factors overwhelmingly favors abstention.

First. Abstention and remand will not adversely affect the administration of the plaintiffs' bankruptcy cases. Even assuming this case is "related to" AllServe's bankruptcy cases, it will not affect AllServe's ability to reorganize, because it is not reorganizing. In fact, according to AllServe's Notice of Removal, the AllServe case was converted to a Chapter 7 proceeding on January 18, 2006. The outcome of this case may affect the amount available to plaintiffs' creditors, but it will not affect plaintiffs' ability to implement a liquidating plan.

Second. Plaintiffs cannot reasonably dispute that Delaware state law issues predominate. The subject matter of the action concerns only the interpretation and enforcement of the Merger Agreement, which by its express terms is governed by Delaware law. Further, neither Plaintiffs' claims nor the defendant's counterclaims

require the Bankruptcy Court's particular expertise, which is another factor that weighs heavily in favor of remand. *See 9281 Shore Road Owners Group v. Seminole Realty Co. (In re 9281 Shore Road Owners Corp.)*, 214 B.R. 676, 696 (Bankr. E.D.N.Y 1997) (remanding in part because the state law claims did not require any "special expertise" of the Bankruptcy Court).

Third. This case will require the resolution of questions of Delaware law in an area in which the Delaware Court of Chancery almost certainly has a greater familiarity than this Court, or the Bankruptcy Court of the District of New Jersey. This case involves a question as to whether a target company was permitted to use the "fiduciary out" clause in a Merger Agreement to terminate the Merger Agreement in favor of what it considered a better proposal. Here, unlike the typical situation in which this issue arises, the better proposal was not simply a merger at a higher price, but instead a completely different transaction involving two promissory notes and warrants for common stock in the Aegis. There is no better suited court to handle a dispute of this nature than the Delaware Court of Chancery. The Court of Chancery is widely regarded as the most experienced court in the nation to deal with complex corporate disputes such as this. "Indeed, the expertise of the State Court would certainly effect a more efficient estate administration . . . ." *Id.*

Fourth. Here, there are no other related proceedings in other state courts or other nonbankrupcy courts and, thus, this factor is at worst neutral.

Fifth. As discussed above there is no basis for this Court's jurisdiction "other than 28 U.S.C. § 1334." Diversity jurisdiction does not exist because both Aegis and AllServe Systems, Inc. are Delaware entities. *See* 28 U.S.C. §1332; *See also Exxon*

*Mobile Corp. v. Allapattah Services, Inc.*, 125 S.Ct. 2611, 2617 ("In case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action."). Furthermore, there is no basis for Federal subject matter jurisdiction.

<u>Sixth</u>. There is absolutely no relationship between the Court of Chancery proceeding and the bankruptcy proceeding. The Court of Chancery proceeding involves a Merger Agreement that was signed more than 2 years before the plaintiffs' filed for bankruptcy. If not for the plaintiffs' inactivity, the Court of Chancery action would likely have been resolved before plaintiffs even filed for bankruptcy.

<u>Seventh</u>. Here, as discussed above, the plaintiffs' claim clearly "relates to" rather than "arises under" Title 11 and, thus, it does not involve a "core" proceeding under 28 U.S.C. § 157.

<u>Eighth</u>. Severing the state law claims from the core bankruptcy matters is not only feasible, but would likely result in a more efficient administration of the estate. As discussed above, the Delaware Court of Chancery is renown for its speed in deciding complex corporate law issues such as this. Furthermore, the Bankruptcy Court of the District of New Jersey would have no problem enforcing any judgment rendered by the Delaware Court of Chancery.

<u>Ninth</u>. This Court needs no reminder from counsel of the burden presented by its docket. The volume of cases on this Court's docket as well at the Bankruptcy Courts' dockets is a significant factor in favor of releasing jurisdiction over this matter.

Tenth.  Plaintiffs' removal of this case "involves forum shopping."  This case presents the unusual situation where a plaintiff, rather than a defendant, has attempted to remove the case to District Court and ultimately Bankruptcy Court. Plaintiffs initially chose the Delaware Court of Chancery as the forum for this action, but after being soundly defeated in their Motion to Expedite Proceedings and their Motion for a Preliminary Injunction, Plaintiffs seek to move to a different forum.  Although not in the traditional sense, this is a rather blatant attempt to forum shop.

Eleventh.  Neither the Delaware Court of Chancery nor the Bankruptcy Court of the District of New Jersey affords the plaintiffs the opportunity for a jury trial, so this factor is neutral.

Twelfth.  The defendant is a non-debtor entity and, therefore, all parties to this action with the exception of the plaintiffs are non-debtor entities.  Thus, this final factor clearly weighs in favor of abstention.

Because the discretionary factors also weigh in favor of abstention, this Court should remand the case to the Court of Chancery.

B.    Equitable Remand

The arguments supporting discretionary abstention under section 1334(c)(1) also supply the equitable grounds for remand to Delaware Court of Chancery under 28 U.S.C. 1452(b).  *See Balcor/Morristown L.P. v. Vector Whippany Assocs.*, 181 B.R. 781, 788 (D.N.J. 1995) ("the standards for deciding whether permissive abstention and equitable remand will be appropriate are substantially the same").  Because a remand under section 1452(b) may be based on "*any* equitable ground," the Court has very broad discretion to remand a removed proceeding. *See Computerwear, Inc. v. Micro Design,*

*Inc. (In re Micro Design, Inc.)*, 120 B.R. 363, 366 (E.D. Pa. 1990). Considerations of comity that underlie both sections 1334 and 1452 have given rise to the rule, applicable generally to federal removal and remand statutes, that, in deciding whether to remand an action to the state court in which it originated, the federal court should resolve all doubts in favor of remand. *See Boyer v. Snapp-On Tools Corp.*, 913 F.2d 108, 111 (3rd Cir. 1990); *Luevano v. Dow Corning Corp.*, 183 B.R. 751 (W.D. Tex. 1995); *Richardson v. Phillip Morris Inc.*, 950 F. Supp. 700, 701-02 (D. Md. 1997).

The equitable factors a Court should weigh in making a remand decision include:

(1)    The court's duty to decide matters properly before it;

(2)    The plaintiff's choice  of forum as between state and federal courts;

(3)    The nature of the claim or claims, (whether purely state law matters which could be better addressed by the state court are involved);

(4)    Prejudice to involuntarily removed parties;

(5)    Comity considerations;

(6)    Economical and/or duplicative use of judicial resources; and,

(7)    The effect a remand decision would have on the efficient and economic administration of the estate.

*Lone Star Indus., Inc. v. Liberty Mut. Ins. Co.*, 1313 B.R. 269 (D. Del. 1991) (*quoting Gorse v. Longneck, Ltd.*, 107 B.R. 479, 482 (D. Del. 1989)).

From the analysis of the substantially overlapping factors that Courts consider in assessing discretionary abstention as set forth above, it is clear that the balance tips decidedly in favor of remand under section 1452(b). In particular, the prejudicial effect of the removal upon the involuntarily removed party especially

warrants remand when, as in this case, Plaintiffs initiated the action in the Delaware Court of Chancery and are now trying to move it because they are unhappy with their results thus far in the Delaware Court of Chancery.   The plaintiffs should not be permitted to switch forums simply to appear before a court that they apparently believe is more inclined to grant them relief.   Furthermore, the defendant asserted counterclaims related to the Merger Agreement and, therefore, has its own causes of action under Delaware law to adjudicate in the Court of Chancery.

        Remanding the state law claims to the Court of Chancery would not only promote efficient case administration, but would also advance another important federal policy: displaying comity for state courts by allowing them to adjudicate state law claims. Comity requires federal respect for state courts' competency to conduct proceedings and enter judgments.   In deciding whether to remand, a Court should "display a proper respect for a state court's role in deciding a purely state law case…".   *Lone Star v. Liberty*, 131 B.R. at 274 (ordering remand in part out of comity considerations).   Comity is made particularly relevant in bankruptcy proceedings by 28 U.S.C.  § 1334 (c)(1), which gives bankruptcy courts broad discretion to abstain from hearing state law claims whenever appropriate "in the interest of comity with State courts or respect for state law." *KSJ Development v. Lambert*, 223 B.R. 677, 680 (E.D. La. 1988).

        In summary, this case involves a dispute between Delaware corporations over a merger agreement governed by Delaware law.  It is a case that lies at dead center of the specialized expertise of the Court of Chancery.  Indeed, plaintiffs filed this case in the Court of Chancery.  They were unsuccessful in their request for preliminary relief and now seek a more sympathetic ear in the New Jersey Bankruptcy Court.  This case is

related to the bankruptcy of AllServe only because it theoretically could bring additional money into the liquidating estate, which is woefully inadequate to justify removal.  The federal statue governing mandatory abstention, equitable considerations, and common sense dictate that this case should be remanded to the Court of Chancery.

CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant its Motion for Abstention or, in the Alternative, Remand.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ R. Judson Scaggs*

R. Judson Scaggs (#2676)
Kevin M. Coen (#4775)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
 Attorneys for Defendant

September 1, 2006

534138

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

Richard D. Abrams, Esquire
HECKLER & FABRIZZIO

Dennis A. Meloro, Esquire
GREENBERG TRAURIG LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on September 1, 2006 upon the following individuals in the manner indicated:

## BY HAND DELIVERY

Richard D. Abrams, Esquire
HECKLER & FABRIZZIO
The Corporate Plaza
800 Delaware Avenue, Suite 200
Wilmington, DE 19801

Dennis A. Meloro, Esquire
GREENBERG TRAURIG LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

*/s/ R. Judson Scaggs*
_____
R. Judson Scaggs (# 2676)